IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CR. NO. 2:19-cr-123-RAH-SRW |
| ) | |
| KEYON MARKQUTTE TYMES ) | |

## REPORT AND RECOMMENDATION

This case is before the court on defendant's motion to suppress (Doc. 27) and the government's response (Doc. 36). The court held an evidentiary hearing on the motion on October 22, 2019. During the hearing, the court heard testimony from David Dayton Winegar, Antonio Goins, and the defendant, Keyon Tymes. For the reasons discussed below, the motion to suppress is due to be denied.

## FACTS[1]

Defendant's motion arises from events that occurred on May 20, 2018. According to Officer David Dayton Winegar,[2] who is employed by the Montgomery Police Department, he and his partner, officer Cognasi, encountered the defendant while on routine patrol in the Virginia Loop and Troy Highway area. As officers Winegar and

---

[1] Some facts not relevant to the court's recommendation have been omitted. Also, to the extent that testimony at the suppression hearing conflicted on some points, this statement of facts reflects the court's findings as to the credible facts before it.

[2] Winegar graduated from the Montgomery Police Academy, where he completed courses in searches and seizures, law, disarming, and traffic stops, among others. He has been employed by the Montgomery Police Department for more than two years.

1

Cognasi drove past the Chevron gas station on Troy Highway,[3] they observed two men whose body language indicated they may be in a verbal altercation. As they pulled into the gas station with the windows on their patrol car lowered, the officers heard a security officer, Anthony Darby, telling the defendant to leave the area. After speaking to Darby, the officers learned that Darby had asked the defendant to leave because he appeared to be drunk and acting loud and disorderly. Winegar and Cognasi spoke with the defendant and asked him to leave the premises. The defendant stated that he had been drinking and had come to buy more beer. The officers smelled alcohol on the defendant's breath. The officers asked the defendant to leave several times and he refused to comply. The defendant continued to argue with officers and raised the volume of his voice. Winegar observed that the defendant slurred his words, staggered, and was unwilling to answer where he lived.

During the officers' conversation with the defendant, officer Cognasi noticed the handle of a firearm sticking out of the right pocket of defendant's sweatshirt and began to detain the defendant as she called out, "Gun." The defendant attempted to reach for the firearm, but the officers seized the gun, a Taurus PT740 Slim .40 S&W pistol, and live ammunition. After detaining the defendant, the officers ran a criminal background check and discovered that the defendant had been convicted previously of a violent felony. The defendant was placed under arrest for public intoxication and for being a prohibited person in possession of a firearm.

**DISCUSSION**

---

[3] The government's response notes that the Chevron in question is located on 4000 Troy Highway in Montgomery, AL.

Defendant moves to suppress all evidence obtained through the "illegal search of the defendant."[4] Defendant mantains that the officers had no reason to engage in a search of his person. The sole argument put forward by the defendant in his motion to suppress and at the suppression hearing was that "the Montgomery Police Patrol Officers hand [sic] no reason to engage in the illegal search." Doc. 27 at 2. The government responds that "the investigatory detention of the defendant was supported by reasonable suspicion and was therefore lawful." Doc. 36 at 1.

   A.   Investigatory Stop / Seizure of Defendant

The Fourth Amendment provides a right to be secure against unreasonable searches and seizures. U.S. Const. amend. IV. "It is axiomatic that not every encounter between law enforcement officers and a citizen in a public place constitutes a seizure within the meaning of the Fourth Amendment." *United States v. De La Rosa*, 922 F.2d 675, 678 (11th Cir. 1991) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). The Eleventh Circuit has identified "three broad categories of police-citizen encounters" for purposes of Fourth Amendment analysis: "(1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detention; and (3) full-scale arrests." *United States v. Perez*, 443 F.3d 772, 777 (11th Cir. 2006) (citing *United States v. Hastamorir*, 881 F.2d 1551, 1555 (11th Cir.

---

[4] Defendant's motion does not set out the individual items or statements he wishes to have suppressed; it simply asks for "all evidence, physical and testimonial, obtained or derived from or through or as a result of the Montgomery Police Patrol Officers unlawful search [sic] seizure, interrogation, arrest and detention which occurred on or about May 20, 2018 at the Chevron gas station." The indictment and testimony from the hearing make it clear that a firearm and ammunition were seized from the defendant. Defendant's motion and testimony do not identify any statements by the defendant. This court examines only the seizure of the defendant and the firearm and ammunition as described in the indictment.

3

1989)). While the first category does not implicate the Fourth Amendment, the second category requires "reasonable, articulable suspicion that the person has committed or is about to commit a crime." *Id.* (quoting *United States v. Espinosa-Guerra*, 805 F.2d 1402, 1506 (11th Cir. 1986)) (internal citations omitted). As the Supreme Court has held: "[l]aw enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." *United States v. Drayton*, 536 U.S. 194, 200-201 (2002). For Fourth Amendment purposes, a seizure occurs only when a defendant's freedom of movement is restrained "by means of physical force or a show of authority." *United States v. Mendenhall*, 446 U.S. 544, 555 (1980); *accord Craig v. Singletary*, 127 F.3d 1030, 1041 (11th Cir. 1997). In an "on-the-street encounter," an investigatory stop is lawful when "the police officer reasonably suspects that the person apprehended is committing or has committed a criminal offense." *Arizona v. Johnson*, 555 U.S. 323, 326 (2009) (citing *Terry*, 392 U.S. 1).

Reasonable, articulable suspicion is determined based on "the totality of circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Hunter*, 291 F.3d 1302, 1306 (11th Cir. 2002) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)); *accord United States v. Matchett*, 802 F.3d 1185, 1192 (11th Cir. 2015). Reasonable suspicion is concerned with probabilities rather than certainties, and a determination of reasonable suspicion must be based on common sense judgments and inferences about human behavior. *See United States v. Reed*, 402 F. App'x 413, 415 (11th Cir. 2010). "The stopping

4

officer is expected to assess the facts in light of his professional experience in assessing" the circumstances to make a determination of reasonable suspicion. *United States v. Kreimes*, 649 F.3d 1185, 1189 (5th Cir. July 1981).[5]

In this case, the court finds Winegar's testimony regarding the officers' encounter with the defendant to be credible. After speaking with Darby, Winegar and Cognasi approached the defendant outside the Chevron gas station, a public location, and asked him questions about where he lived and about his confrontation with Darby. Winegar observed that the defendant yelled at Darby, slurred his words, staggered, refused to answer where he lived, and smelled of alcohol. Despite these observations, the officers initially simply asked the defendant to leave the premises multiple times. There was no indication that the defendant was not free to leave. The defendant also testified that he was told that he was free to go. Instead, the defendant continued to argue and raised his voice in a manner that was boisterous. As they were still engaged in conversation with the defendant, officer Cognasi observed what appeared to be the handle of a gun sticking out from the right-side pocket of the defendant's sweatshirt. Based on these observations and Winegar's training on the effects of alcohol, as well as his prior encounters with other intoxicated persons, he determined that there was reasonable suspicion to seize the defendant, and Winegar and Cognasi physically restrained the defendant and retrieved the firearm.

Winegar and Cognasi had sufficient reasonable suspicion to stop the defendant for an investigatory detention under the totality of the circumstances. Under Alabama law, "[a]

---

[5] Under *Bonner v. City of Pritchard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), this court is bound by cases decided by the former Fifth Circuit before October 1, 1981.

person commits the crime of public intoxication if he appears in a public place under the influence of alcohol . . . to the degree that he endangers himself or another person or property, or by boisterous and offensive conduct annoys another person in his vicinity." Ala. Code. § 13A-11-10 (1975). The circumstances in this case indicate that the officers had reasonable suspicion that the defendant was under the influence of alcohol, that he was a danger to himself or others, and that his conduct was boisterous. In particular: (1) the officers observed a dispute between the defendant and Darby; (2) the officers heard a verbal altercation between the defendant and Darby; (3) the officers learned from Darby that the defendant had been asked to leave the premises; (4) the officers detected the smell of alcohol when speaking with the defendant and observed specific behaviors that indicated he may be intoxicated; and (5) officer Cognasi observed the handle of a gun sticking out of defendant's sweatshirt.

      B.      Frisk / Seizure of Firearm

Officers Winegar and Cognasi were entitled to frisk defendant if they had a reasonable suspicion that the defendant was armed and dangerous. *Johnson*, 555 U.S. at 326-327. As detailed above, the defendant's breath smelled of alcohol, he exhibited behaviors indicating that he may be intoxicated, and officer Cognasi noticed what appeared to be the handle of a gun sticking out of his sweatshirt pocket. Winegar testified that the defendant tried to reach for the weapon as the officers attempted to detain him and, based on Winegar's determination that the defendant was intoxicated and represented a potential threat to the safety of the officers and the defendant himself, the officers seized the weapon and detained the defendant. Under these circumstances, the officers were justified in

concluding that there was a fair probability that the defendant was armed and dangerous, and they had sufficient reasonable suspicion to frisk the defendant and to seize the gun.[6]

## CONCLUSION

For the reasons stated above, it is the RECOMMENDATION of the magistrate judge that defendant's motion to suppress (Doc. 27) be DENIED.

On or before March 11, 2020, the parties may file an objection to this recommendation. The parties must specifically identify the factual findings and legal conclusions contained in the recommendation to which their objection is made. Frivolous, conclusive, or general objections will not be considered by the court.

Failure to file written objections to the proposed factual findings and legal conclusions set forth in the recommendations of the magistrate judge shall bar a party from a *de novo* determination by the district court of these factual findings and legal conclusions and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon the grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 966 F.2d 1144, 1149 (11th Cir. 1993) (per curiam); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, on this the 25th day of February, 2020.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge

---

[6] Because the court concludes that *Terry* permitted the stop and seizure in this case, it does not reach the question of whether the plain view exception, described in *United States v. Smith,* 459 F.3d 1276, 1290 (11th Cir.2006), also applies.