# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:19CR123-RAH |
| | ) | |
| KEYON MARKQUTTE TYMES | ) | |

**MEMORANDUM OPINION and ORDER**

Defendant Keyon Markqutte Tymes ("Tymes") was charged on August 7, 2019, in a superseding indictment with possession of a firearm by a prohibited felon in violation of 18 U.S.C. § 922(g)(1). On August 19, 2019, he filed a motion to suppress "all evidence, physical and testimonial . . . as the result of the Montgomery Police Patrol Officers unlawful search, seizure, interrogation, arrest and detention" on May 20, 2018, in Montgomery, Alabama, in the Middle District of Alabama. (Doc. 27, p. 1.) Claiming the officers did not have probable cause to search his person, Tymes contends that all evidence seized and statements made should be suppressed because the search violated the Fourth Amendment to the United States Constitution.

After an evidentiary hearing, the Magistrate Judge recommended the Court deny the Motion to Suppress Evidence. (Doc. 72.) On March 11, 2020, Tymes filed Objections to the Report and Recommendation of the Magistrate Judge. (Doc. 73.) Upon an independent and *de novo* review of the record, including a review of the

transcript of the hearing before the Magistrate Judge, and for the reasons that follow, the Court concludes that the Objections are due to be OVERRULED and the Motion to Suppress is due to be DENIED.

## I. STANDARD OF REVIEW

When a party objects to a Magistrate Judge's Report and Recommendation, the district court must review the disputed portions of the Recommendation *de novo*. 28 U.S.C. § 636(b)(1). The district court "may accept, reject, or modify the recommendation; receive further evidence; or resubmit the matter to the magistrate judge with instructions." FED.R.CRIM.P. 59(b)(3).

*De novo* review requires the district court to independently consider factual issues based on the record. *Jeffrey S. ex rel. Ernest S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 513 (11th Cir. 1990). "Although *de novo* review does not require a new hearing of witness testimony, *United States v. Raddatz,* 447 U.S. 667, 675–76, 100 S.Ct. 2406, 2412–13, 65 L.Ed.2d 424 (1980), it does require independent consideration of factual issues based on the record." *Id.* If the Magistrate Judge made findings based on witness testimony, the district court must review the transcript or listen to a recording of the proceeding. *Id.* The Court has reviewed the transcript of the suppression hearing in its entirety.

## II. DISCUSSION

**A. Background**

On or around 11:45 p.m. on May 20, 2018, Montgomery Police Officer David D. Winegar and his partner Officer Cognasi rolled down the windows of their patrol car and conducted a routine patrol of the area near Troy Highway and Virginia Loop in Montgomery, Alabama. (Doc. 50, R. 4, 14.) While driving along Troy Highway, Officer Winegar heard loud voices outside the Chevron gasoline station. (*Id.*, R. 5.) He observed a security guard pointing toward Tymes and saw Tymes raising his hands in the air. (*Id.*) As the officers drove into the parking lot, they overheard the security officer tell Tymes to leave. (*Id.*)

The officers got out of their car and spoke with the security guard. The security guard told them he had asked Tymes "to leave the area because he was drunk, he's being loud, he's being disorderly." (*Id.*, R. 6.) The officers approached Tymes, noticed the smell of alcohol, and asked him to leave. (*Id.*) Tymes, speaking in a loud manner, said, "I've been drinking. I'm coming here to buy some more beer." (*Id.*, R. 6.) During their conversation, Officer Winegar noticed that Tymes slurred his words and smelled alcohol on Tymes' breath. (*Id.*, R. 13.) At some point during the conversation, one of the officers asked Tymes for his driver license and he gave it to him. (*Id.*, R. 22, 43.) Officer Winegar asked Tymes to leave multiple times, but Tymes stayed and his voice became louder. (*Id.*, R. 20-21, 30.)

When Tymes turned to the side, Officer Cognasi noticed a handle in the large pocket of Tymes' hoodie sweatshirt and said, "Gun." (*Id.*, R. 8.) The officers

attempted to detain him. (*Id*., R. 8.) Tymes struggled and appeared to reach for the gun. (*Id*., R. 8-9.) After detaining Tymes with handcuffs, the officers searched Tymes and found a Taurus 740 handgun in his pocket. (*Id*., R. 8.) The officers seized the gun and placed Tymes in the back of the patrol car. (*Id*., R. 11.) Upon running his identification information through the National Crime Information Center, the officers learned that Tymes had a prior felony conviction for second degree assault. (*Id*., R. 11-12.) Tymes was arrested for public intoxication and possession of a firearm. (*Id*., R. 14.)

**B. Credibility without a Video**

Tymes first objects to the Magistrate Judge's finding that Officer Winegar's testimony was more credible than his own version of the events. Specifically, he contends that Officer Winegar's testimony was not credible because the officer failed to complete a form requesting video of the body and dash camera videos within 72 hours of the event as required by Montgomery Police Department ("MPD") policy and procedure § 9.1.8.[1]

---

[1] Officer Antonio Goins testified that MPD Policy and Procedure § 9.1.8 provides:

> Digital video will be maintained for 60 days and then set for deletion. Any time an event is recorded which will be preserved for evidence or an investigation, then the vehicle operator is required to fill out a video request form and turn the form over to the back desk supervisor within 72 hours of the event in order for the event to be marked as evidence and recorded on a CD/DVD. The vehicle operator would then retrieve the video/CD from the desk supervisor and then impound the CD as evidence. The video request must be completed and the impound form would be completed and submitted to a desk supervisor on all recordings of vehicles, pursuits, and use of force incidents captures on video.

(Doc. 50, R. 36-37.)

To date, the MPD has not produced any video footage of the incident. During the suppression hearing, MPD Officer Antonio Goins, a police detective and case agent, explained that digital video is set for deletion 60 days after the initial recording. Officer Goins testified that he did not request the video within the time period because he was assigned to the case after the 60-day period had expired.[2]

Contrary to Tymes' contention, there is nothing in the record indicating that Officer Winegar "made a conscious decision to not take the steps necessary to save crucial evidence in this case." (Doc. 73.) If anything, Officer Winegar's testimony indicates he was under the impression, albeit mistaken, that the video was readily available. During the suppression hearing, Officer Winegar testified that his usual practice after a shift is to load his body camera onto a docking station which stores the video on a computer. He also stated that the dash camera begins downloading via Wi-Fi when the patrol car is parked at the station. When asked about the cameras, he stated that the footage was "probably in the recordings" and offered to provide more information from his activity sheets. (Doc. 50, R. 17.) The lack of a video under these circumstances is not a basis for rejecting the Magistrate Judge's credibility finding. *See United States v. White*, 660 Fed. Appx. 779, 783-84 (11th Cir. 2016) (determining dismissal of the indictment was not warranted where there

---

[2] During the suppression hearing, no direct evidence was presented establishing that the data was, in fact, deleted from the MPD computers. At the end of the hearing, the Magistrate Judge granted defense counsel's request to hold the record open for five days in order to seek information regarding the camera footage. (Doc. 50, R. 58.)

was no evidence that the government deliberately deleted emails in bad faith).

C. **Reasonable Suspicion**

1. <u>**The Fourth Amendment**</u>

Tymes' remaining objections are based on the Magistrate Judge's findings that the officers had reasonable suspicion to stop and frisk him.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. amend. IV. "A seizure under the Fourth Amendment occurs when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *United States v. Franklin*, 323 F.3d 1298, 1301 (11th Cir. 2003) (quotation marks omitted). But "not every encounter between a police officer and a citizen" constitutes a seizure under the Fourth Amendment. *Id*. (citation omitted). To determine whether a person has been seized under the Fourth Amendment, "[t]he proper inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *United States v. Drayton*, 536 U.S. 194, 202 (2002) (quotation marks omitted). Facts relevant to this determination include whether the officers made any intimidating movements, displayed an overwhelming show of force, brandished weapons, made any threats, made any commands, or blocked the individual's path of exit. *Id*. at 204. When a reasonable person would not feel free to terminate the encounter, he has been "seized," and the

Fourth Amendment is implicated. *Franklin*, 323 F.3d at 1301.

Under *Terry*, however, law enforcement officers may, consistent with the Fourth Amendment, "stop and briefly detain a person to investigate a reasonable suspicion that he is involved in criminal activity." *United States v. Williams*, 876 F.2d 1521, 1523 (11th Cir. 1989). To constitute a valid *Terry* stop, the officers conducting the stop must "have a reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity." *United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000). Although reasonable suspicion "requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). It "must be more than 'an inchoate and unparticularized suspicion or hunch.'" *Powell*, 222 F.3d at 917 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

Reasonable suspicion "does not require officers to catch the suspect in a crime. Instead, 'a reasonable suspicion of criminal activity may be formed by observing exclusive legal activity.'" *United States v. Acosta*, 363 F.3d 1141, 1145 (11th Cir. 2004) (quoting *United States v. Gordon*, 231 F.3d 750, 754 (11th Cir. 2000)). An area's reputation for criminal activity is a factor that may be considered when determining whether reasonable suspicion exists. *Gordon*, 231 F.3d at 755–56. "[T]he police may draw on their own experience and specialized training to make

inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Lindsey*, 482 F.3d at 1290–91 (quotation marks omitted). As such, "[r]easonable suspicion is determined from the totality of circumstances and collective knowledge of the officers." *United States v. Nunez*, 455 F.3d 1223, 1226 (11th Cir. 2006).

In general, police officers must obtain a warrant supported by probable cause to justify a search under the Fourth Amendment. *United States v. Magluta*, 418 F.3d 1166, 1182 (11th Cir. 2005). A warrantless search of a person is therefore presumptively unreasonable. *United States v. Burgos*, 720 F.2d 1520, 1525 (11th Cir. 1983). But under *Terry*, an officer may frisk or pat-down an individual in order to conduct a limited search for weapons where the officer has reason to believe that the individual is armed and dangerous. *Terry*, 392 U.S. at 27. "Once an officer has legitimately stopped an individual, the officer can frisk the individual so long as 'a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" *United States v. Hunter*, 291 F.3d 1302, 1307 (11th Cir. 2002) (quoting *Terry*, 392 U.S. at 27).

### 2. The Initial Stop

Tymes objects to the Magistrate Judge's finding that the officers had reasonable suspicion to stop him based on Officer Winegar's testimony that he slurred his words, staggered, and refused to answer questions about where he lived.

Tynes alleges that his own testimony demonstrates he was not intoxicated because the two beers in his possession were unopened. He further argues the Magistrate Judge's finding that he refused to answer where he lived is incorrect because he cooperated with the officers by providing his driver license, which listed his address.

In this case, Officer Winegar articulated a reasonable articulable suspicion to briefly detain Tymes in order to further investigate for public intoxication or other criminal activity based on the odor of alcohol on Tymes' breath and his belligerent behavior. *See United States v. Salter*, 255 F. App'x 355, 358–59 (11th Cir. 2007) (per curiam) (determining the smell of alcohol on the defendant's breath during the early morning hours in a high crime area, among other factors, established reasonable suspicion). Thus, Tymes' Objections to the Recommendation on this basis are due to be overruled.

### 3. The Frisk

Tymes' final objection to the Magistrate Judge's Recommendation is that the officers were entitled to frisk him if they had a reasonable suspicion he was armed and dangerous. Tymes argues the officers were without reasonable suspicion because the film footage, if available, would show the firearm was not visible and that Tymes was neither intoxicated nor acting in a dangerous manner.

As previously discussed, Officer Winegar's testimony, which the Magistrate Judge found to be credible, shows that the officers had a reasonable suspicion to stop

and briefly detain Tymes. Upon approaching Tymes, the officers had an objective reasonable suspicion that Tymes was engaged in criminal activity, justifying his brief detention. Moreover, Tymes did not answer the officer's question and became loud when asked to leave. In addition, the incident happened around midnight in an area where fights and robberies previously had occurred. Officer Winegar testified that Tymes argued with a security guard, refused to leave the premises after several requests to do so, became loud, and smelled of alcohol. He also testified that his partner saw a handle in Tymes' pocket and alerted him to a gun. Consequently, the officers had reason to believe their safety and the safety of others was in danger. *See United States v. Salter*, 255 F. App'x at 359–60. Tymes' objection on this basis is due to be overruled.

### III. CONCLUSION

For the reasons as stated, the Court concludes that Tymes' Fourth Amendment rights were not violated, and the Motion to Suppress Evidence is due to be denied. Accordingly, it is

ORDERED as follows:

1. The Defendant's Objections (Doc. 73) are OVERRULED;

2. The Recommendation of the Magistrate Judge (Doc. 72) is ADOPTED; and

3. The Defendant's Motion to Suppress (Doc. 27) is DENIED.

DONE, this 19th day of March, 2020.

                                        /s/ R. Austin Huffaker, Jr.
                                    R. AUSTIN HUFFAKER, JR.
                                    UNITED STATES DISTRICT JUDGE